IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

FILED

JAN 1 3 2020

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____
                      DEP CLK

No. 5:14-CR-128-2H2

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | SUPERSEDING |
| v. | ) | CRIMINAL INFORMATION |
| | ) | |
| WILLIAM TODD CHAMBERLAIN | ) | |

The United States Attorney charges that:

## INTRODUCTION

1.    CA was a Sergeant First Class (E-7) in the United States Department of the Army assigned to the 3rd Special Forces Group based at Fort Bragg, North Carolina.

2.    Defendant WILLIAM TODD CHAMBERLAIN (hereinafter referred to as "CHAMBERLAIN") was a Sergeant First Class (E-7) in the United States Department of the Army assigned to the 3rd Special Forces Group based at Fort Bragg, North Carolina.

3.    JC was a Staff Sergeant (E-6) in the United States Department of the Army assigned to the 3rd Special Forces Group based at Fort Bragg, North Carolina.

4.    DH was a Chief Warrant Officer in the United States Department of the Army assigned to the 3rd Special Forces Group based at Fort Bragg, North Carolina.

5.    BW was a Sergeant First Class (E-7) in the United States Department of the Army assigned to the 3rd Special Forces Group based at Fort Bragg, North Carolina.

6. From July 2009 through January 2010, CA, CHAMBERLAIN, JC, DH, and BW were deployed to Afghanistan together as a Special Forces Group split-team under the command of the Combined Joint Special Operations Task Force. During this deployment, DH was the Officer-In-Charge and CHAMBERLAIN was the senior Non-Commissioned Officer.

7. This split-team had access to various United States federal funds earmarked for the operation and reconstruction efforts overseas. Specifically, the split-team had access to Operation Funds ("OP funds"), Commander's Emergency Response Funds ("CERP funds"), 1208 funds, and Non-Attributable Vehicle Funds ("NAV funds"). OP funds allow deployed units to purchase mission critical items that cannot otherwise be obtained through military supply systems. CERP funds are used to pay for humanitarian projects intended to benefit the local Afghan populace, such as public roads, schools and medical clinics. 1208 and NAV funds are used by Special Operations Forces to support counterterrorism operations.

8. Split-team members were given certain assignments with respect to the OP, CERP and 1208 funds to assure the monies were properly accounted for and to prevent any misuse.

9. With respect to the OP funds, JC was the Field Ordering

2

Officer ("FOO"). As such, JC was responsible for contracting with local vendors for various mission requirements. CA was the Paying Agent ("PA"). He was responsible for safeguarding the funds, paying the local vendors to who JC contracted with and accounting for the expenditure of OP funds. It is standard practice for the FOO and PA to be present at each transaction. In addition, the FOO, PA and vendor are required to sign the receipt evidencing the payment, known as a SF-44. The receipts were subsequently submitted by CA to the Finance Office at Bagram Airfield, in Afghanistan.

10. With respect to the CERP funds, JC was the Project Purchasing Officer ("PPO") and CA was the PA. DH was the Initiating Officer who signed the purchase requests submitted to obtain funding from the Finance Office. As with the OP funds, JC, CA and the vendors were required to sign the receipts for the Finance Office.

11. With respect to the 1208 funds, BW was the PA. All members of this split-team performed assignments that required them to disburse these classified funds. DH, as the Officer-in-Charge, signed the receipts as witness of the 1208 expenditures.

12. CHAMBERLAIN currently resides in the Eastern District of North Carolina.

## COUNT ONE

13. Paragraphs 1 through 12 of this Superseding Criminal Information are hereby re-alleged.

14. Beginning in or about July 2009, the exact date being unknown, and continuing up to August 2012, the exact date being unknown, within the Eastern District of North Carolina, within Afghanistan, and elsewhere, WILLIAM TODD CHAMBERLAIN did knowingly combine, conspire, confederate, and agree with CA, JC, DH, BW and others, known and unknown to the grand jury, to commit offenses against the United States, to wit:

> to knowingly and unlawfully embezzle, steal, purloin, and convert to his use and the use of another, things of value of the United States and a department and an agency thereof, the value of which in the aggregate *did* exceed the sum of $1,000, in violation of Title 18, United States Code, Section 641.

## PURPOSE OF THE CONSPIRACY

15. It was the purpose of the conspiracy to embezzle, steal and convert United States federal funds earmarked for war operational and reconstruction efforts for the personal benefit of the co-conspirators.

## MANNER AND MEANS

16. In furtherance of the conspiracy, CA, CHAMBERLAIN, JC, DH, and BW, along with others, employed the following manner and

4

means:

       a.    Withdrew federal funds in the form of Afghan currency, known as Afghanis, from the Finance Office at Bagram Airfield, *in* Afghanistan.

       b.    Took the Afghanis to Forward Operating Base Fenty ("FOB Fenty"), in Jalalabad, Afghanistan.

       c.    Embezzled, stole and converted a portion of the Afghanis.

       d.    Converted the Afghanis into U.S. currency.

       e.    Knowing that they would be accountable for all of the federal monies spent in connection with operational and reconstruction efforts, the co-conspirators falsified receipts to conceal the amount of monies stolen, and submitted falsified receipts to the Finance Office in Bagram Airfield, Afghanistan.

       f.    Distributed the embezzled, stolen, and converted federal funds to the co-conspirators.

       g.    Used a portion of the stolen U.S. currency to purchase United States Postal Money Orders ("PMO").

       h.    Electronically deposited some of these PMOs into United Services Automobile Association ("USAA") bank accounts from Afghanistan.

       i.    Mailed some of the PMOs or stolen U.S. currency from

5

Afghanistan to the United States.

j. Transported some of the PMOs or stolen U.S. currency on their persons and in their luggage from Afghanistan to the United States.

k. Made false statements to federal law enforcement officers to conceal the conspiracy to embezzle, steal and convert United States federal funds earmarked for war operational and reconstruction for the personal benefit of the co-conspirators.

## OVERT ACTS

17. In furtherance of the conspiracy, and to effect the object thereof, there were committed by at least one of the co-conspirators, in the Eastern District of North Carolina and at the United States military installations in Afghanistan, at least one of the following overt acts, among others:

a. On or about August 9, 2009, DH, at FOB Fenty, purchased a PMO with approximately $500 of stolen federal funds, and then, electronically deposited the PMO into his USAA bank account.

b. On or about September 21, 2009, DH, at FOB Fenty, purchased a PMO with approximately $1,000 of stolen federal funds, and then, mailed the PMO from Afghanistan to a USAA branch in the United States for deposit into Harper's USAA account.

6

c.    On or about September 27, 2009, CA, at FOB Fenty, purchased a PMO with approximately $500 of stolen federal funds, and then, electronically deposited the PMO into his USAA bank account.

d.    On or about October 1, 2009, CHAMBERLAIN, at FOB Fenty, purchased a PMO with approximately $500 of stolen federal funds, and then, electronically deposited the PMO into his USAA bank account.

e.    On or about October 9, 2009, DH, at FOB Fenty, used approximately $3,900 of stolen federal funds to purchase five PMOs with face values of $500, $400, $1,000, $1,000, and $1,000, respectively.  Four PMOs were mailed from Afghanistan to the United States as payments toward DH's credit card balances.

f.    On or about October 9, 2009, CHAMBERLAIN, at FOB Fenty, purchased a PMO with approximately $900 of stolen federal funds, and then, electronically deposited the PMO into his USAA bank account.

g.    On or about October 21, 2009, CHAMBERLAIN, at FOB Fenty, purchased a PMO with approximately $900 of stolen federal funds, which he mailed to a relative in the Eastern District of North Carolina.

h.    On or about October 30, 2009, CHAMBERLAIN, at FOB

7

Fenty, used $1,500 of stolen federal funds to purchase two PMOs with face value of $700 and $800, respectively. CHAMBERLAIN then electronically deposited these two PMOs into his USAA bank account.

i.   On or about November 4, 2009, CHAMBERLAIN, at FOB Fenty, purchased a PMO with approximately $1,000 of stolen federal funds, and then, electronically deposited the PMO into his USAA bank account.

j.   On or about November 10, 2009, BW, at Bagram Airfield, used $2,600 of stolen federal funds to purchase three PMOs with face values of $600, $1,000 and $1,000, respectively.

k.   On or about November 11, 2009, CHAMBERLAIN, at FOB Fenty, used $1,800 of stolen federal funds to purchase two PMOs, each with a face value of $900. CHAMBERLAIN then electronically deposited these two PMOs into his USAA bank account.

l.   On or about December 2, 2009, CA and BW, at Bagram Airfield, used $8,200 of stolen federal funds to purchase nine PMOs. Six PMOs were deposited into CA's USAA bank account and three PMOS were deposited into BW's USAA bank account.

m.   On or about December 13, 2009, DH, at Bagram Airfield, purchased two PMOs with approximately $2,000 of stolen federal funds, which were subsequently deposit into DH's USAA bank account.

8

n.   On or about December 22, 2009, JC, at FOB Fenty, used $1,000 of stolen federal funds to purchase two PMOs, each with a face value of $500.

o.   On or about December 23, 2009, BW, at FOB Fenty, used $2,700 of stolen federal funds to purchase three PMOs, with face values of $700, $1,000 and $1,000, respectively.  All three PMOs were electronically deposited into BW's USAA bank account.

p.   On or about January 9, 2010, DH and BW deposited PMOs, which that had purchased, at FOB Fenty, with stolen federal funds, into their respective USAA bank accounts.

q.   On or about June 21, 2012, JC falsely stated to federal law enforcement officers during an interview in the Eastern District of North Carolina that he had no knowledge of his split-team members stealing federal funds during the 2009-2010 deployment.

r.   On or about June 25, 2012, CA falsely stated to federal law enforcement officers during an interview in the Eastern District of North Carolina that he had not participated in a conspiracy to steal federal funds during the 2009-2010 deployment.

s.   On or about July 20, 2012, BW falsely stated to federal law enforcement officers during an interview in the Eastern District of North Carolina that he purchased between $25,000 and

9

$35,000 in PMOs while deployed in Afghanistan with cash he won through gambling.

t. On or about July 24, 2012, DH falsely stated to federal law enforcement officers during an interview in the Eastern District of North Carolina that he purchased between $25,000 and $35,000 in PMOs while deployed in Afghanistan with cash he won through gambling.

u. On or about August 10, 2012, DH told BW, among other things, that he told federal law enforcement officers the same "gambling piece" he and BW had previously discussed.

v. On or about August 14, 2012, JC told BW, among other things, that the federal law enforcement officers need a confession to prove the conspiracy and he was "not going to give it to them."

w. On or about August 28, 2012, DH advised JC and BW, among other things, that "if someone doesn't talk it stays white collar" and "they have to go off paperwork."

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

18. Paragraphs 1 through 12 of this Superseding Criminal Information are hereby re-alleged.

10

19.    Beginning in or about July 2009, the exact date being unknown, and continuing up to and including January 2010, the exact date being unknown, within the Eastern District of North Carolina, within Afghanistan, and elsewhere, WILLIAM TODD CHAMBERLAIN, aiding and abetting others, did willfully and knowingly receive, conceal and retain money of the United States and a department and an agency thereof, that is the Department of Defense, including its components, the value of which in the aggregate did exceed the sum of $1,000, with intent to convert the money to his use and gain, knowing the money had been embezzled, stolen, purloined, and converted by CA, JC, DH, and BW from the Department of Defense, an agency of the United States.

All in violation of Title 18, United States Code, Sections 641 and 2.

11

## FORFEITURE NOTICE

WILLIAM TODD CHAMBERLAIN is given notice of the provisions of Title 18, United States Code, Section 981(a)(1)(C), as made applicable by Title 28, United States Code, Section 2461(c), that all of his interest in all property specified herein is subject to forfeiture.

As a result of the foregoing offenses, as alleged in this Superseding Criminal Information, WILLIAM TODD CHAMBERLAIN shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to said offenses.

The forfeitable property includes, but is not limited to:

(1)  U.S. currency in the amount of $40,000;

If any of the above-described forfeitable property, as a result of any act or omission of WILLIAM TODD CHAMBERLAIN,

   (1)  Cannot be located upon the exercise of due diligence;

   (2)  Has been transferred or sold to, or deposited with, a
        third person;

   (3)  Has been placed beyond the jurisdiction of the court;

   (4)  Has been substantially diminished in value; or

   (5)  Has been commingled with other property which cannot be

12

subdivided without difficulty,

It is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of WILLIAM TODD CHAMBERLAIN up to the value of the forfeitable property described above.

ROBERT J. HIGDON, JR
United States Attorney

By: _____
SUSAN B. MENZER
Assistant United States Attorney
Criminal Division

13